UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23442-CIV-GOLD/MCALILEY

AGNELO CARDOSO,

    Plaintiff,

vs.

CARNIVAL CORPORATION,

    Defendant.

_____/

**ORDER GRANTING MOTION TO DISMISS [DE 14] IN
PART; STRIKING PROVISION FROM SEAFARER'S AGREEMENT;
COMPELLING ARBITRATION; STAYING CASE PENDING ARBITRATION;
DENYING ALL PENDING MOTIONS AS MOOT AND CANCELLING HEARINGS**

**I.    Introduction**

THIS CAUSE is before the Court upon Defendant Motion to Dismiss and Compel Arbitration **[DE 14]**, filed February 12, 2010. On March 5, 2010, Plaintiff filed a response in opposition **[DE 23]**, and on March 10, 2010, Defendant filed a reply **[DE 25]**.[1] Having carefully considered the relevant submissions, the record, and the applicable case law, I grant the motion in part, deny the motion in part, and stay this matter pending arbitration for the reasons that follow.

**II.    Background**

This case arises from injuries sustained by the Plaintiff, an Indian seaman by the

---

[1] Plaintiff also filed a motion for leave to file a supplemental memorandum of law following Defendant's with leave of court. *See* **[DE 27-1]**. Defendant filed a response in opposition **[DE 28]**, and Plaintiff then filed a reply **[DE 30]**. Defendant also moved to strike Plaintiff's reply. **[DE 31]**. I deny the aforementioned motions as moot and note that the matters addressed in the supplemental filings have little, if any, bearing on my analysis for the reasons that follow.

name of Agnelo Cardoso ("Plaintiff"), while employed aboard Defendant Carnival Corporation's ("Defendant" or "Carnival") Panamanian-flagged vessel, the "M/S Elation" **[DE 1]**. On September 25, 2009, Plaintiff filed suit for maintenance and cure, Jones Act negligence,[2] unseaworthiness, and failure to provide prompt and adequate treatment in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. **[DE 1]**. On November 10, 2009, Defendant removed the action to this Court pursuant to the federal removal statutes, *see* 28 U.S.C. § 1441[3] and 28 U.S.C. § 1446, and the removal provision of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards 9 U.S.C. § 201, *et seq.* ("the Convention Act").[4] On January 14, 2010, Plaintiff filed a motion for remand, *see* **[DE 8]**, which was denied on February 24, 2010 when I concluded that this matter was properly removable because the jurisdictional prerequisites of the Convention were met given the Seafarer's Agreement ("SA"), which was executed by Plaintiff on June 19, 2008. *See* **[DE 22]**. The SA provides in Paragraph 7 that, with the exception of wage disputes governed by Carnival's grievance policy, "any and all disputes arising out of or in connection with this Agreement . . . shall be referred to and finally

---

[2] *See* 46 U.S.C. § 30101 *et seq.* (2009).

[3] Under 28 U.S.C. § 1441, a defendant can remove an action to the United States District Court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Moreover, the party that removes the state court action to federal court bears the burden of showing that federal jurisdiction exists. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

[4] The Convention on Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 3 will be referred to collectively as "the Convention" and its implementing legislation, 9 U.S.C. §§ 201-208 (2002), as the "Convention Act."

resolved by arbitration [in] . . . England, Monaco . . . Panama, or Manila . . . whichever is closer to the Seafarer's home country."[5]  **[DE 1]**.  Additionally, Paragraph 8 provides that

> [the SA] shall be governed by, and all disputes arising under or in connection with [the SA] or Seafarer's service on the vessel shall be resolved in accordance with [sic] the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder."

*Id.*[6]   Defendant now moves this Court to compel arbitration pursuant to the Convention and the aforementioned provisions of the SA.  *See* **[DE 14]**.  Plaintiff opposes Defendant's motion, arguing that the arbitration clause is void or unenforceable for a number of reasons.  First, Plaintiff argues that the arbitration clause is void because it forces Plaintiff "to resolve any disputes in an arbitral forum that must apply non-U.S. law, creating a waiver of his U.S. statutory rights in violation of public policy."  *See* **[DE 17]**  Second, Plaintiff asserts that the claims at issue are non-arbitrable, arguing that the case of *Bautista v. Star Cruises* – which affirmed an order compelling arbitration of plaintiff's Jones Act claims under the Convention – was wrongly decided.  *See generally* 396 F.3d 1289 (11th Cir. 2005).  Finally, Plaintiff argues that the arbitration provision is "defective due to the parties' unequal bargaining power." **[DE 23]**.[7]  I will address each argument in

---

[5] All are signatories to the Convention.

[6] Paragraph 9 of the SA provides that "[i]f any provision, term, or condition of this Agreement is invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms, and conditions of this Agreement shall not be affected thereby and shall remain in full force and effect."  **[DE 1]**.

[7] Plaintiff also argues that Defendant should be precluded from moving for the enforcement of arbitration clauses such as the one at issue here because of a quote contained in a Joint Status Report in a prior case to which Defendant was a party.  The quote at issue stated

turn.

### III.     Standard of Review

Court's deciding motions to compel arbitration under the Convention and its implementing legislation are bound to conduct a "very limited inquiry." *Bautista*, 396 F.3d at 1294-95.  According to the Eleventh Circuit, "[a] district court *must* order arbitration unless (1) the [Convention's] four jurisdictional prerequisites are not met, . . . or . . . one of the Convention's affirmative defenses applies." *Id.* (citations omitted).  The four jurisdictional prerequisites are that: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.*, n. 7 (citation omitted).  These jurisdictional prerequisites are not at issue in the instant case.

As to the Convention's affirmative defenses, "[t]he Convention requires that courts enforce an agreement to arbitrate unless the agreement is 'null and void, inoperative or incapable of being performed.' " *Id.* at 1301 (quoting the Convention, art. II(3)). The "null

---

that "[t]he Eleventh Circuit concluded, therefore, that Plaintiff's remaining count – Plaintiff's Wage Act – was not arbitrable because the Wage Act (like the Jones Act, or the Civil Rights Act, or the A.D.A.) is a U.S. statutory claim that could not be done away with by a an arbitration clause coupled with a foreign choice of law clause applying foreign law." **[DE 27-1]**.  Although not expressly stated as such, it appears that Plaintiff is arguing that Carnival should be judicially estopped from advocating the enforceability of such provisions.  I reject this contention, for Plaintiff has failed to adequately demonstrate the essential elements of judicial estoppel.  *See Robinson v. Tyson Foods, Inc.*, 2010 WL 396130, *2 (11th Cir. Feb. 5, 2010).

and void" clause must be read narrowly because "the signatory nations have declared a general policy of enforceability of agreements to arbitrate." *Bautista v. Star Cruises*, 286 F. Supp. 2d 1352, 1366 (S.D. Fla. 2003).  The Eleventh Circuit has also held that the "public policy" provision found at Article V(2)(b) of the Convention –  which provides, in pertinent part, that "[r]ecognition and enforcement of an arbitral award may also be refused if . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country" – is also an "affirmative defense[] to a suit that seeks a court to compel arbitration." *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009).[8]

**IV.   Analysis**

As a threshold matter, I reject Plaintiff's arguments that the arbitration provision at issue should be declared unenforceable because (1) Jones Act claims are categorically not

---

[8]

As Judge Seitz recently noted in her order denying Plaintiff's motion for reconsideration in the case of *Bulgakova v. Carnival Corporation*, Case No.: 09-cv-20023, [DE 33] n. 3 :

> "the *Thomas* and *Bautista* courts draw the Convention's 'affirmative defenses' from different sections.  As noted above, the *Bautista* court looked to Article II(3), which enumerated defenses to enforcement of the agreement to arbitrate.  *See Bautista*, 396 F.3d at 1301-02.  By contrast, the *Thomas* court referred to Article V(2)(b), which discusses the occasions where courts may refuse to confirm awards issued *after* arbitration has been enforced.  *See Thomas*, 573 F.3d at 1120.  While Article V(2)(b)'s express terms empower courts to refuse to confirm arbitration awards granted *after* arbitration is complete, the *Thomas* court's reliance on Article V[(2)(b)]'s defense *prior to* arbitration is sanctioned by the relevant Supreme Court case law. . . . The Supreme Court has noted that courts presented with a motion to compel arbitration must invoke Article V only in the following circumstances: '[w]ere there *no subsequent opportunity for review and* were we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies, we would have little hesitation in condemning the agreement as against public policy."

(emphasis in original) (cites and quotes omitted).

arbitrable; and (2) the "bargaining position of the Plaintiff and Defendant are nowhere near commensurate." **[DE 23]**.  While I acknowledge Plaintiff's belief that the Eleventh Circuit wrongly decided *Bautista*, this Court is bound by *Bautista* and will not disregard its holdings as Plaintiff requests.  *See Anderson v. Dunbar Armored, Inc.*, 2009 WL 2568062, *45 (N.D. Ga. Aug. 18, 2009) (noting that published decisions of the Eleventh Circuit and pre-September 30, 1981 cases of the former Fifth Circuit are binding precedent).[9]

As Defendant correctly points out, *Bautista* expressly held that the district court "properly granted [the cruise line's] motion to compel arbitration" of the seafarer's claims "for negligence and unseaworthiness under the Jones Act . . . and for failure to provide maintenance [and] cure" pursuant to the Convention.  *Bautista*, 396 F.3d at 1292, 1303. Moreover, the Eleventh Circuit also held that the same unequal bargaining power complained of here – i.e., where a multinational cruise line presents a foreign seafarer with an employment contract on a "take it or leave it" basis – does not "fit within the limited scope of defenses" to the enforceability of an arbitration agreement provided for by the Convention.  *Bautista*, 396 F.3d at 1302 (concluding that "[w]hile it is plausible that economic hardship might make a prospective [] seaman susceptible to a hard bargain during the hiring process, Plaintiffs have not explained how this makes for a defense under the Convention").  Accordingly, based on the Eleventh Circuit's binding decision in *Bautista*, I reject Plaintiff's arguments that (1) the Jones Act claims are not arbitrable; and (2) the disparity in bargaining power between Plaintiff and Defendant renders the arbitration

---

[9] Curiously, Plaintiff argued in a recent filing related to its motion to remand that "[t]rial courts must follow [the] binding precedent" of the Eleventh Circuit, *see* **[DE 17]**, but now requests that I ignore binding precedent of the very same nature.

agreement unenforceable under the Convention.[10]

I now address Plaintiff's argument that the Panamanian choice-of-law provision contained in Plaintiff's SA renders the agreement to arbitrate unenforceable because the two clauses operate in tandem to deprive Plaintiff of his U.S. statutory remedies. The parties agree that under the terms of Paragraphs 7 (arbitration) and 8 (choice of law) of the SA, as written, Plaintiff would be required to arbitrate his claims in the Philippines applying Panamanian law. **[DE 14]**; **[DE 8]**. However, they disagree as to whether the enforcement of these provisions is permissible as a matter of public policy. Plaintiff argues that it is not, citing the *Thomas* case, which held that a choice-of-law clause and arbitration clause in a seafarer's agreement could not – as a matter of public policy – operate in tandem as a prospective waiver of a seafarer's rights to pursue a Seaman's Wage Act claim without the assurance of a subsequent opportunity for review. *Thomas*, 573 F.3d 1113. In response, Defendant attempts to distinguish *Thomas* on the grounds that its holding was limited to Seaman's Wage Act claims,[11] and should not be extended to encompass other claims, such as Plaintiff's maintenance and cure and Jones Act claims. Defendant also argues that *Thomas* does not control the instant case because, unlike the plaintiff in *Thomas*,

---

[10] I recognize that a contrary result might be warranted in a purely domestic context. However, as the Eleventh Circuit noted in *Bautista*, "such an approach is required by the unique circumstances of foreign arbitration [where] concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Id*. (cites and quoted omitted).

[11] Defendant argues that Seaman's Wage Act claims, like certain statutory antitrust claims, are given unique treatment because they implicate matters of particular public interest and are thus entitled to enhanced protection. **[DE 14]**; *Thomas*, 573 F.3d at 1123.

7

Plaintiff Cardoso is also pursuing common law maritime claims (e.g., maintenance and cure) that are cognizable under foreign law and will provide an opportunity for judicial review of the arbitrator's decision.

While Defendant is correct insofar as the Eleventh Circuit's narrow holding in *Thomas* applied only to claims asserted pursuant to the Seaman's Wage Act,[12] a holistic reading of *Thomas* indicates that the Eleventh Circuit's reasoning applies with equal force to claims brought pursuant to the Jones Act. Specifically, I note that the Eleventh Circuit did not focus on the unique nature of the Seaman's Wage Act in reaching its conclusion that foreign choice-of-law and arbitration clauses can – if enforced in tandem – constitute a prospective waiver of statutory rights in violation of public policy. Rather, the Eleventh Circuit focused on the fact that the clauses would "have 'operated in tandem' to completely bar Thomas from relying on *any* U.S. statutorily-created causes of action." *Id.* at 1113 (emphasis added); *see also id.* at 1124 (noting that enforcing the foreign choice-of-law and arbitration clauses in tandem "is exactly the sort [of result] that the Supreme Court has described as a prospective waiver of parties rights to pursue statutory remedies without the assurance of a 'subsequent opportunity for review' ") (cites and quotes omitted). Accordingly, I reject Defendant's argument that *Thomas'* directives regarding the prospective waiver of statutory remedies are inapplicable to Plaintiff's Jones Act claims.

I now turn to Defendant's contention that *Thomas* does not control this case

---

[12] The Eleventh Circuit declined to address the questions of the arbitration and choice-of-law clauses' enforceability with regard to Mr. Thomas' Jones Act claims because it held that the Jones Act claims "[did] not fall under the Arbitration Clause"; it reached this conclusion based on the fact that Thomas' Jones Act claims arose before he signed the agreement containing the clauses at issue. *Thomas*, 573 F.3d 1119, 1120 n.9.

because Plaintiff, unlike the plaintiff in *Thomas*, will be afforded "a subsequent opportunity for review" in light of the fact that – in addition to his Jones Act claims – he has also brought a number of common law claims against Defendant that are cognizable under foreign law. Defendant is correct to the extent that the Eleventh Circuit's decision in *Thomas* was predicated upon the fact that there might be no opportunity for review of the arbitrator's decision. *See id.* At 1123-1124. However, those concerns are equally applicable to the case at bar. That is, just like in *Thomas*, there is a "distinct possibility" in that, if the clauses at issue are left fully intact, the arbitrator(s), who would be "bound to effectuate the intent of the parties" and apply Panamanian law, could render a decision that would result in Plaintiff "receiv[ing] no award."[13] 573 F.3d at 1124. Thus, I reject Defendant's contention that the instant Plaintiff is guaranteed an opportunity for meaningful review subsequent to arbitration.

Having concluded that the Paragraphs 6 and 7 of Plaintiff's SA – if enforced in tandem – would render the SA a prospective waiver of Plaintiff's statutory remedies in violation of public policy, I now turn to the question of how this public policy violation can be effectively remedied. In crafting a remedy, I note that there are at two policy interests at issue here that must be respected, if possible. The first is the powerful "international policy favoring commercial arbitration," which, as the Supreme Court has expressly noted, requires the "subordinat[ion] [of] domestic notions of arbitrability" in domestic courts.

---

[13] For example, even though the duty to provide maintenance and cure is almost always imposed on shipowners whose servants have been injured in the course of their duties, it could be determined that Plaintiff is not entitled to maintenance and cure because his injury resulted from his "culpable misconduct" or occurred at a time when Plaintiff was not "in the service of the ship." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3-4 (1975).

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-39 (1985). The second is the policy at the heart of the *Thomas* decision, which calls on courts to protect "a party's right to pursue statutory remedies" as a matter of "public policy."[14] *Thomas,* 573 F.3d at 1122.  Having carefully considered the applicable law and the aforementioned policy interests, I conclude that the appropriate remedy is to sever the Panamanian choice-of-law provision in accordance with Paragraph 9 of the agreement at issue.  *See* Section II n.6, *supra* (noting that Paragraph 9 of the SA provides that "[i]f any provision, term, or condition of [the SA] is invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms, and conditions of this Agreement shall not be affected thereby and shall remain in full force and effect").

As the Eleventh Circuit has noted, courts "[f]aced with arbitration agreements proscribing statutorily available remedies . . . have either severed the illegal provision and ordered arbitration, or held the entire agreement unenforceable."  *Perez v. Globe Airport Sec. Services, Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001) (citations omitted), *vacated on other grounds*, 294 F.3d 1275 (11th Cir. 2002).  "Courts finding severance appropriate rely on a severance provision in the arbitration agreement, or the general federal policy in favor of enforcing arbitration agreements. " *Id.* (citations omitted).   Here, there is *both* a severance provision *and* a strong policy favoring arbitration.  Moreover, unlike the cases in which severance was held to be an inappropriate remedy, the clause in which the parties

---

[14] While I recognize that other policies might also be implicated by the resolution of the issues before me (e.g., the general policy favoring the enforcement of bargained-for contracts), the policies discussed above are the two that have the most bearing on the particular issue before me.

10

agreed to arbitrate their disputes stands separate and apart from the unenforceable foreign choice-of-law clause. *Compare Perez*, 253 F.3d at 1286 (declining to server unlawful provision because "agreement [did] not contain a severability provision") *and Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1058 (11th Cir. 1998) (noting that severance of certain provisions within an integrated arbitration agreement that limited statutory remedies would be "problematic" because the entire agreement to arbitrate was "tainted"). Thus, unlike the *Paladino* court, I am not faced with a few sentences embedded within an integrated arbitration provision that purport to limit a party's statutory remedies. *Id.* at 1056. Instead, I am faced with a stand-alone choice-of-law provision – in an agreement that expressly provides for severance of unenforceable provisions – that must be condemned as a matter of public policy. *See Caban v. J.P. Morgan & Chase Co.,* 606 F. Supp. 2d 1351 (S.D. Fla. 2009) (Jordan, J.) (severing unconscionable class action waiver from otherwise valid arbitration provision where agreement contained severability provision). Accordingly, I conclude that severance of the unenforceable choice-of-law provision is the appropriate remedy, as it promotes both policies at issue without having to unnecessarily elevate one over the other; the arbitration provision remains enforceable.[15]

### V.   Conclusion

Based on the foregoing, I conclude that the choice-of-law provision contained in the SA is unenforceable and should be severed pursuant to the SA's severability provision.

---

[15] It bears mentioning that "an agreement to arbitrate . . . statutory claims" should not be confused "with a prospective waiver of the substantive right"; an agreement to arbitrate "does not waive the statutory right . . . it waives only the right to seek relief from a court in the first instance." *14 Penn Plaza LLC v. Pyett*, 129 S.Ct. 1456, 1469 (2009). Here, it is the choice-of-law provision, and not the arbitration provision itself, that attempts to impinge on Plaintiff's statutory rights.

However, the arbitration provision contained in the SA shall be enforced pursuant to the Convention and its implementing legislation. While Defendant requests dismissal, I note that the Eleventh Circuit has expressed its preference that district courts stay arbitrable claims rather than dismiss them. *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir. 1992). Accordingly, it is hereby

ORDERED AND ADJUDGED that:

1. Defendant's Motion **[DE 14]** is GRANTED IN PART AND DENIED IN PART.

2. Paragraph 8 is hereby STRICKEN from Plaintiff's Seafarer's Agreement and shall be treated by the parties as null and void.

3. Plaintiff's claims shall be submitted to binding arbitration in accordance with Paragraph 7 of his Seafarer's Agreement and the provisions of this Order.

4. This case is STAYED.

5. The clerk is directed to ADMINISTRATIVELY CLOSE this case.

6. All pending motions are DENIED AS MOOT and all upcoming hearings are CANCELLED.

7. Either party may move to re-open this matter for good cause shown.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 15th day of March, 2010.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
All counsel of record